**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| AMOS WILSON, SR., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:20-CV-00918-SDJ- |
| | § | CAN |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds the Commissioner's decision is **AFFIRMED**.

**RELEVANT PROCEDURAL HISTORY AND MEDICAL EVIDENCE**

On July 8, 2015, Amos Earl Wilson, Sr. ("Plaintiff") filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act, initially asserting an onset of disability date of July 8, 2015 [TR 27]. Plaintiff's application was denied by notice, and again upon reconsideration [TR 27]. Plaintiff requested an administrative hearing ("First Hearing") by an administrative law judge ("ALJ") [TR 27, 158], which was held on November 16, 2017 [TR 58-80]. At the First Hearing, Plaintiff, and a vocational expert ("VE") presented testimony [TR 60-80]. Plaintiff was represented by counsel [TR 60]. On March 9, 2018, the ALJ issued an unfavorable decision denying Plaintiff's application [TR 134-137]. Plaintiff requested review of

the decision by the Appeals Council [TR 27].  On June 20, 2019, the Appeals Council approved

Plaintiff's request for review and subsequently remanded the case [TR 27].

A second hearing was held on April 13, 2020 ("Second Hearing") (collectively with First

Hearing, the "Hearing"), where Plaintiff amended his onset of disability date to October 8, 2016

[TR 27].[1]  Plaintiff was born on October 9, 1966, making him fifty (50) years of age at the time of

his alleged onset of disability date and fifty-three (53) years of age on the date of decision [TR 85,

TR 24].  His age classification is "an individual closely approaching advanced age" [TR 36].  *See*

20 C.F.R. § 404.1563(e).  Plaintiff has obtained a GED and has previous work history as a forklift

operator and as a mover [TR 66, 99].  After hearing testimony and conducting a review of the facts

of Plaintiff's case, the ALJ made the following sequential evaluation [TR 24-39].  At step one, the

ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended onset

date [TR 29].  At step two, the ALJ found that Plaintiff had the following severe impairments:

hypertension, diabetes mellitus, cervical and lumbar spine degenerative disc disease, lumbar

radiculopathy, and chronic pain syndrome [TR 30].  At step three, the ALJ found that Plaintiff

does not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R

§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) [TR 30-31]. The ALJ

further went on to explain in detail why Plaintiff failed to meet the listing for 1.04 (Disorders of

the spine) and Listing 4.03 for hypertensive cardiovascular disease [TR 31].  At step four, the ALJ

determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R §§ 404.1567(a) and 416.967(a) with the following limitations:

---

[1] The ALJ's Notice of Decision lists the amended onset date as October 5, 2016. However, upon careful review of the record, the correct amended onset date is October 8, 2016 [TR 85].

[Plaintiff] has the residual functional capacity to lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand and/or walk, in combination, for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and push or pull commensurate with lifting restrictions. [Plaintiff] has the inability to reach overhead bilaterally more than occasionally and he must avoid exposure to noxious fumes, odors, dust, and gases.

[TR 32].  Relevant herein, in connection with step four, the ALJ made the following findings related to the opinions of the state agency medical consultants' assessments:

Per the Appeals Council's order, the undersigned has considered the State agency medical consultants' assessments, giving further consideration to the non-examining source opinions pursuant to the provisions of 20 CFR 416.927. The undersigned has found that they are not consistent with the record as a whole (Exhibits 2A and 4A). The opinions fail to evaluate fully the full effect of claimant's impairments, and the evidence of record establishes claimant's impairments produce more severe symptoms than found in this opinion. Therefore, the undersigned assigns the State agency medical consultants' opinions no more than partial weight. However, in carefully crafting the residual functional capacity assessment, the undersigned has given the claimant's subjective complaints the greatest consideration reasonably supported by the evidence. Longitudinally, the evidence simply does not support an impairment or combination of impairments that would suggest greater limitation.

In sum, the residual functional capacity stated above reflects the claimant's limitations due to his impairments. The medical records show that the claimant's hypertension, diabetes mellitus, cervical and lumbar spine degenerative disc disease, lumbar radiculopathy, and chronic pain syndrome, in combination, interfere with his ability to perform work related activity. Thus, after reviewing all of the medical evidence, the residual functional capacity limits the claimant to light work in order to reflect his limitations.

[TR 34].  Continuing the step four analysis, the ALJ found Plaintiff is unable to perform any of his past relevant work [TR 36].  At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform" including routing clerk (DOT 222.687-022), light, SVP 2; counter clerk (DOT 249.366-010), light, SVP 2; and photocopy machine operator (DOT 207.685-014), light, SVP 2" [TR 37].  Based on this determination, the ALJ concluded that

Plaintiff has not been under a disability from October 8, 2016, through the date of the ALJ's decision [TR 29].[2]

On May 1, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 1]. On September 26, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner [TR 1-4]. On November 30, 2020, Plaintiff filed the instant suit [Dkt. 1]. On December 9, 2021, Plaintiff filed his Opening Brief [Dkt. 24], and on February 28, 2022, the Commissioner filed its Response in Support of the Commissioner's Decision [Dkt. 27]. Plaintiff's Reply brief was filed March 10, 2022 [Dkt. 28].

***SAMCs Opinions***

On August 1, 2016, State agency medical examiner Dr. Jeanine Kwun reviewed Plaintiff's medical record [TR 109-111]. Dr. Kwun assessed Plaintiff as occasionally able to lift and/or carry up to 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and push and/or pull commensurate with the limitations for lifting and/or carrying [TR 109]. Dr. Kwun found Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations [TR 109]. Accordingly, Dr. Kwun determined that Plaintiff should be limited to medium work [TR 111].

---

[2] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of the disability claim is not disabled. 20 C.F.R § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his or her impairment corresponds to a listed impairment in 20 C.F.R., Part 404 Subpart P, Appendix 1. 20 C.F.R § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he can perform his past work. 20 C.F.R § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. 20 C.F.R § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability: then, at the last step, the burden ships to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

On November 2, 2016, State agency medical examiner Dr. Patty Rowley reviewed Plaintiff's medical records [TR 118-121]. Dr. Rowley assessed Plaintiff as occasionally able to lift and/or carry up to 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for more than six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and push and/or pull commensurate with the limitations for lifting and/or carrying [TR 120]. Dr. Rowley similarly found Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations [TR 109]. Dr. Rowley determined that Plaintiff should be limited to light work [TR 122].

### *Hearing Testimony*

On November 16, 2017, the Plaintiff testified at the First Hearing [TR 58]. Plaintiff stated that he previously worked as a forklift operator and as a mover [TR 67]. He went on to explain that he stopped working due to sharp pain in his neck, back, and shoulders [TR 67-68]. According to Plaintiff, this pain made it difficult for him to lift things and to reach overhead [TR 68-69, 71]. Plaintiff further testified that he engaged in activities of daily living, including driving every day, bathing, showering, and dressing himself [TR 73-74]. Regarding treatment, Plaintiff had only been treated using injections and pain medication, but claimed they were not effective [TR 67-68]. On April 13, 2020, Plaintiff testified at the Second Hearing [TR 81]. Plaintiff confirmed to the ALJ that his treatment had been only injections and the use of various pain medications [TR 90-91]. Plaintiff reiterated that reaching overhead caused pain and that his doctor advised him to avoid "reaching up" [TR 96-97].

The VE presented testimony about Plaintiff's past employment history, noting work that classified as semi-skilled medium and semi-skilled very heavy [TR 99]. The ALJ proposed the following hypothetical to the VE:

> [A]ssume a hypothetical individual of the Claimant's age and education. Further assume the individual has the Claimant's past jobs that you've just described, and that the individual would be able to lift and/or carry 20 pounds on occasion, 10 pounds frequently, would be able to sit for six hours out of an eight-hour day, walk and stand for six hours out of an eight-hour day. Pushing and pulling would be unlimited except the lifting and carrying restrictions, occasional overhead reaching bilaterally, and the individual should avoid noxious fumes, odors, dusts, and gas.

[TR 99-100].  The VE testified that the hypothetical individual would not be capable of performing Plaintiff's past work [TR 100]. When asked if there was existing work in the national economy for the hypothetical individual, the VE responded that there was and gave the following examples:

> Examples would include a Routing Clerk. DOT is 222.687-022, light, SVP: 2. National employment statistics are 20,520. A Counter Clerk. DOT is 249.366-010, light, SVP: 2. National employment statistics are 19,240. And a Photocopy Machine Operator. DOT code is 207.685-014, light, SVP: 2. National employment statistics, 17,910.

[TR 100].  At the conclusion of the Second Hearing, Plaintiff's attorney affirmatively advised the ALJ that he believed there was a complete record regarding Plaintiff's disability determination [TR 101].  Specifically, the ALJ inquired, "All right.  Do you believe we have a complete record?" [TR 101].  To which, Plaintiff's counsel affirmatively responded, "I do, Your Honor." [TR 101].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v.*

*Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff raises two points of error: (1) whether the ALJ failed to adequately develop the record, and (2) whether the ALJ's RFC determination is supported by substantial evidence.

### *ALJ Did Not Fail to Fully Develop the Record*

Plaintiff contends the ALJ's alleged rejection of the SAMCs' opinions, along with the deterioration of Plaintiff's condition since the time of their opinions, triggered the ALJ's duty to develop the record more fully [Dkt. 24 at 10-13]. Plaintiff specifically advances the ALJ should have secured an updated medical opinion from a consultative examiner or a medical expert [Dkts. 24 at 12; 28 at 4].

"The Fifth Circuit [ ] imposes a duty on an ALJ 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000) (quoting *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995)). To determine whether the ALJ fully

and fairly developed the record, the Court asks whether the record contained sufficient evidence for him to make an informed decision. So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." *Goforth v. Commissioner*, No. 6:14-cv-591, 2016 WL 878323, *2 (E.D. Tex. Mar. 8, 2016) (citing *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing 20 C.F.R. §§ 404.1516, 416.916).[3]

Notably, neither Plaintiff nor Plaintiff's representative raised the issue at the Second Hearing that the record was incomplete or in need of further development. Indeed, when Plaintiff's attorney was directly asked by the ALJ at the Second Hearing if he believed there was a complete record, Plaintiff's attorney responded affirmatively [TR 101]. *See Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, 998 (5th Cir. 2009) (finding the ALJ determination was supported by substantial evidence when plaintiff's own testimony at the hearing suggested no further need to develop the record). "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Hernandez v. Kijakazi*, No. 5-20-CV-00389-RBF, 2021 WL 3046884, at *4 (W.D. Tex. July 19, 2021) (quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)) ("Although the record looks incomplete and the ALJ appears to have been on notice of that fact . . . . the [c]ourt is troubled by the affirmative representation by [plaintiff's] counsel at the administrative hearing that the record was complete."); *Gonzalez v. Barnhart*, No. 02-50270, 51 Fed. App'x 484 (5th Cir. 2002) (finding no failure to develop record where ALJ inquired whether plaintiff desired to present additional evidence).

---

[3] Generally, however, the duty to obtain medical records (in the first instance) is on the claimant. *See Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981).

Moreover, while the ALJ has discretion to order a consultative examination, a CE at government expense is not required unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision. *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *8 (5th Cir. 2005). Here, Plaintiff offers only speculation that a further medical opinion would change the ALJ's findings: "the record reflects the deterioration of Plaintiff's physical condition that should have been assessed by a medical expert" [Dkt. 24 at 12]. "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). Moreover, the ALJ addressed head-on in the May 2020 Notice of Decision Plaintiff's contention that the subsequent medical evidence showed a deterioration of Plaintiff's condition:

> In terms of the claimant's alleged cervical and lumbar spine degenerative disc disease, lumbar radiculopathy, and chronic pain syndrome, the claimant has nothing but evidence of multiple steroid injections and medication-focused pain management (Exhibits 4F and 14F). Since the claimant's application date and alleged onset of disability date, he has had no invasive treatment for his spinal conditions. He has not been referred for surgery, additional pain management, physical therapy, home therapy, or any other intensive therapy. There are no recent MRIs, CT scans, x-rays, or any other imaging that show significant degeneration. Imaging showed what little evidence of disc degeneration was no more than mild-moderate (Exhibit 14F). Further, the medical evidence of record contains no evidence that the claimant has presented to the emergency room for severe acute pain. Physically, in combination with his nearly unrestricted activities of daily living, it is abundantly clear that the claimant's conditions are not nearly as incapacitating as what he alleges. By all indications, it appears that the claimant's condition is well controlled by nothing more than prescription pain medications and medication management.

[TR 35]. The ALJ found the record evidence did not support Plaintiff's contention regarding the progression of his physical condition. Plaintiff fails to show further development of the record

was necessary for the ALJ to make a disability decision.[4]  *See Reynolds v. Saul*, No. 3:20-cv-97-JMV, 2021 WL 2371343, at *2 (N.D. Miss. June 9, 2021) (finding conditions for ordering a CE not met where the evidence in the record showed consistent exam findings related to plaintiff's impairment).

***Substantial Evidence Supports the ALJ's RFC Assessment***

Plaintiff further argues that the ALJ's RFC is erroneous because "the ALJ relied on his lay interpretation of Plaintiff's medical condition and determined Plaintiff's functional limitations based on nothing more than raw medical data" [Dkt. 24 at 9].  Citing *Williams v. Astrue*, 355 F. App'x 828 (5th Cir. 2009), Plaintiff asserts that the ALJ rejected the opinions of Dr. Kwun and Dr. Rowley, resulting in the ALJ "playing doctor" and determining Plaintiff's RFC based only on his lay interpretation of raw medical data [Dkt. 24 at 9].  In addition, Plaintiff argues that the ALJ rejected the Plaintiff's subjective complaints when crafting the RFC [Dkt. 28 at 4-5].  The Commissioner rejoins that the ALJ did not reject the SAMC's opinions, instead, "the ALJ gave [the SAMCs] prior administrative medical findings regarding Plaintiff's physical RFC 'partial weight,' but *added* limitations beyond what the SAMCs found, giving Plaintiff's subjective complaints the benefit of the doubt." [Dkt. 27 at 1 (emphasis in the original)].  Thus, the Commissioner urges substantial evidence supports the ALJ's determination.  [Dkt. 27 at 10].

Generally, the RFC finding reflects a disability claimant's maximum remaining ability to perform work activities despite his or her medically determinable impairments.  20 C.F.R. §

---

[4] "[The] Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). To establish prejudice under these circumstances, "a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'"  *Id.* (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)); *Goforth*, 2016 WL 878323, at *2 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)) (explaining that reversal for "failure to develop the record" is appropriate "only where the claimant shows prejudice").  Plaintiff has failed to show prejudice.  As discussed *infra*, substantial evidence supports the ALJ's conclusion.  It follows therefore that the ALJ did not abuse his discretion in failing to develop the record more fully.

404.1545(a).  Plaintiff is correct that in determining the RFC the ALJ must avoid "playing doctor and making [his] own independent medical assessment."  *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990)).  However, the Fifth Circuit has also emphasized that it is not the Court's intent to require the Commissioner to obtain the RFC finding directly from a medical opinion, thereby nullifying the ALJ's role as fact-finder.  *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016).  Indeed, the ALJ has sole responsibility for determining a claimant's RFC.  *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Ripley*, 67 F.3d at 557.  To that end, the task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  The ALJ is not confined to picking one opinion and adopting it.  *G.K.C. v. Soc. Sec. Admin.*, No. 14-cv-0999, 2016 WL 1035393, at *2 (W.D. La. Feb. 24, 2016).  "Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source."  *Id*.  No doctor's opinion is, alone, conclusive as to the RFC, and "the ALJ's RFC assessment need not match with precision to any medical source opinion."  *Cunningham v. Astrue*, No. 2:10-cv-01216-BSJ, 2011 WL 3651026, at *7 (D. Utah Aug. 17, 2011).

Plaintiff's argument that the ALJ rejected the SAMC's opinions and "crafted a specific RFC without guidance from any examining or non-examining source" fails to credit the evidence of record [Dkt. 24 at 10].  To begin with, contrary to Plaintiff's assertion, partial weight was expressly afforded to both Dr. Kwun's and Dr. Rowley's opinions [TR 36].  Plaintiff's further contention that the ALJ did not rely on Plaintiff's subjective complaints in crafting his RFC is

similarly unpersuasive [Dkt. 28 at 4-5].  In Plaintiff's reply brief, he states that "the ALJ found that Plaintiff's allegations were 'not sufficiently supported by the record as a whole in light of the objective medical findings.'" [Dkt. 28 at 4].  Plaintiff fails to cite all pertinent parts of the ALJ's findings related to Plaintiff's subjective complaints.  The ALJ states the following:

> After careful consideration of the record as a whole, the undersigned finds that the claimant's medically determinable impairments can reasonably be expected to produce some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms have been determined to diminish the capacity for basic work activities only to the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence of record and the above residual functional capacity. The allegations concerning the impairments and the impact on the ability to work are not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history and degree of medical treatment required, and the claimant's description of his activities of daily living for the reasons explained in this decision.
>
> ***
>
> Physically, in combination with his nearly unrestricted activities of daily living, it is abundantly clear that the claimant's conditions are not nearly as incapacitating as what he alleges. By all indications, it appears that the claimant's condition is well controlled by nothing more than prescription pain medications and medication management. Further, there is some evidence that the claimant has some documented compliance issues, in which he is inconsistent with his medication regimen (Exhibit 11F). While the claimant's musculoskeletal troubles are appreciable, their documentation did not indicate such severity as to preclude work. The undersigned understands the reflective/refractive synergistic effects of his several conditions; he has no somatic-related diagnoses. Ultimately, the undersigned is left with evidence preponderating toward the conclusion that, while the claimant has physical challenging conditions, they are not so debilitating as to forestall competitive employment. However, out of the abundance of caution, the undersigned has restricted the claimant to light work activity in order to accommodate his conditions. The undersigned does not find the claimant's conditions preclude the residual functional capacity found above.

[TR 35].  The ALJ clearly states that Plaintiff's condition can be reasonably expected to produce some of the alleged symptoms. However, the alleged symptoms and their severity were only accepted to the degree to which they were consistent with the other evidence of record. This does not support Plaintiff's contention that the ALJ found all of Plaintiff's complaints unsupported by

the record and thus did not rely on them when assessing Plaintiff's RFC [Dkt. 28 at 5]. The ALJ further goes on to outline Plaintiff's daily living activities, current treatment for his conditions, the lack of evidence that significant degeneration in Plaintiff's condition has occurred since Plaintiff's application date and alleged onset of disability date, and the balancing the ALJ has done between the medical records and Plaintiff's subjective complaints. [TR 36].

Plaintiff's RFC is neither an outright adoption of Dr. Kwun, nor Dr. Rowley's opinion of Plaintiff's functional capacity [TR 32, 104-12, 114-23], but clearly represents a consideration of both, alongside Plaintiff's subjective complaints. In fact, close review of the RFC and the record reflects that the ALJ crafted an RFC identical to that of Dr. Rowley, the SAMC on reconsideration, aside from the addition of two non-exertional limitations, which are clearly taken from Plaintiff's own testimony and statement of his subjective complaints [TR 32, 36].[5] More specifically, one of the limitations crafted into the RFC was that Plaintiff may not reach overhead bilaterally more than occasionally [TR 32]. That limitation directly corresponds with Plaintiff's testimony at Hearing that he has difficulty reaching overhead [TR 69, 96-97]. The ALJ properly executed his duty to weigh the evidence and determined that certain subjective complaints from Plaintiff were sufficiently supported by the objective medical evidence to warrant additional restrictions [TR 36]. The ALJ's RFC finding is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's decision be **AFFIRMED**.

---

[5] Moreover, as Plaintiff appears to recognize, and the Commissioner repeatedly points out, had the ALJ adopted the SAMCs opinions in their entirety, the ALJ could have not been faulted for impermissibly relying on his own lay opinion. The SAMCs opinions would support a finding that Plaintiff was less limited than the ALJ ultimately found.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 28th day of June, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE